**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HILDENE OPPORTUNITIES MASTER FUND, LTD., BRETT JEFFERSON and JASON SPEAR, as trustees for the Hildene Capital Management Pension Plan, and MEMBRES, LLC,<br><br>*Plaintiffs*,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON,<br><br>*Defendant*. | Case No. _____<br><br>**COMPLAINT** |

Plaintiffs Hildene Opportunities Master Fund, Ltd.; Brett Jefferson and Jason Spear, as trustees for the Hildene Capital Management Pension Plan; and Membres, LLC, by and through their undersigned counsel, for their complaint against defendant The Bank of New York Mellon (the "Trustee"), state as follows:

## NATURE OF THE ACTION

1. This action arises from a dispute over the Trustee's refusal to make required distributions to the holders of income notes issued by Preferred Term Securities XIV, Ltd. The proceeds of the income notes, along with other notes issued by Preferred Term Securities XIV, Ltd. and its co-issuer, Preferred Term Securities XIV, Inc. (collectively, the "Co-Issuers"), were used to purchase capital securities, namely debt instruments issued by banks to raise capital. These capital securities were then pledged to secure the notes. The transaction is governed by an Indenture dated June 17, 2004, and Defendant The Bank of New York Mellon, as successor to The Bank of New York, serves as the Trustee.

2.      In February 2018, the Trustee completed a successful auction of all of the capital securities underlying the transaction.  The proceeds from the auction were first applied to redeem the Co-Issuers' senior and mezzanine notes, as required by the Indenture.  Following this redemption, the remaining balance from the auction was over $20.6 million.  The Indenture expressly required the Trustee to distribute most, if not all, of this sum to holders of the remaining class of notes, the income notes.  The Trustee, however, refused to do so, instead reserving the entire amount at the direction of the Co-Issuers, purportedly to fund the Co-Issuers' potential future expenses.  Yet, the Indenture does not authorize the Trustee to hold back proceeds of a successful auction to cover future expenses.  To the contrary, it requires the Trustee to distribute a "final payment" of all available funds to all classes of notes, including the income notes, immediately.  The Trustee's actions thus deprive Plaintiffs of their contractual rights as holders of income notes.  Accordingly, Plaintiffs bring this action to protect those rights through seeking declaratory relief that will hold the Trustee in compliance with the Indenture.

## THE PARTIES

3.      Plaintiff Hildene Opportunities Master Fund, Ltd. is a Cayman Islands exempted company managed by Hildene Capital Management, LLC, an SEC-registered advisor that is headquartered in Connecticut.  The Plaintiff is incorporated in the Cayman Islands, and its activities are managed, directed, controlled, and coordinated in Connecticut.

4.      Plaintiff Brett Jefferson is a trustee of the Hildene Capital Management Pension Plan, and a resident of St. John, United States Virgin Islands.

5.      Plaintiff Jason Spear is a trustee of the Hildene Capital Management Pension Plan, and a resident of Connecticut.

6. Plaintiff Membres, LLC is a Texas limited liability company with its principal place of business in Texas.

7. Defendant The Bank of New York Mellon is a New York banking corporation.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different States.

9. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2) because property that is the subject of the action is situated in the Southern District of New York.  Venue in this district is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(3).

## FACTUAL BACKGROUND

### I. THE TRUSTEE IS REQUIRED TO DISTRIBUTE AVAILABLE PROCEEDS IN ACCORDANCE WITH THE INDENTURE'S TERMS

10. The Co-Issuers are special purpose vehicles formed for the purpose of issuing debt securities called "collateralized debt obligations" or "CDOs."  The Co-Issuers' underlying assets consisted of a portfolio of capital securities that were issued by banks to raise capital. Created in 2004, the Co-Issuers funded its purchase of these capital securities by issuing various classes of CDO notes.  The capital securities were then pledged to secure the CDO notes, and investors who purchased the notes received a right to share in the stream of payments representing the notes' interest and principal.

11. The Co-Issuers issued three general classes of CDO notes: senior notes, mezzanine notes, and income notes.  Plaintiffs are holders of income notes.

12. The Co-Issuers' operation is governed by an Indenture dated June 17, 2004, a true and correct of which is attached as Exhibit A.  The Indenture enumerates the Trustee's and the

Co-Issuers' rights and obligations, and, in the case of the Trustee specifically, details the "Priority of Payment" the Trustee is required to follow when distributing principal and interest payments.  Generally, only after any accrued transaction expenses and principal and interest on the more senior obligations are paid in full are the principal and interest obligations on the more subordinate tranches paid.  This Priority of Payment structure is commonly known as a payment "waterfall," and the Trustee is responsible for distributing payments to the transaction parties in strict accordance with the Priority of Payments set forth in the Indenture.

13.	The Indenture does not permit the Trustee to depart from the Priority of Payments, even at the request of the Co-Issuers.  The Trustee, for example, may take direction from the Co-Issuers in certain specified instances pursuant to an "Issuer Order."  In particular, the Indenture permits the Co-Issuers to direct the Trustee with respect to a handful of administrative actions, including the authentication and delivery of notes, the issuance of temporary notes, and the appointment of an independent appraiser.  With respect to the Priority of Payments, however, the Indenture does not authorize the Trustee to follow an Issuer Order, much less any Order that would have the effect of altering the contractual waterfall.

14.	Indeed, any deviation from the Priority of Payments results in an Event of Default under the Indenture.

15.	In addition to protecting the order of distribution, the Indenture also provides noteholders, including holders of income notes, with an unconditional right to payment from available funds.  Section 3.1, for example, requires "the Issuer [Preferred Term Securities XIV, Ltd.], in the case of the Income Notes, [to] duly and punctually pay the principal of and interest on the Notes, respectively, in accordance with the respective terms of the Notes …."[1]  Similarly,

---

[1] The income notes are obligations of Preferred Term Securities XIV, Ltd., the "Issuer," and are not obligations of Preferred Term Securities XIV, Inc., or the "Co-Issuer."

4

under Section 5.7, "the Holder of any Note shall have the right, *which is absolute and unconditional*, to receive payment of the Aggregate Principal Amount of and interest, if any, on such Note … on or after the respective due dates … and such right shall not be impaired without the consent of such Holder." Any impairment of these unconditional rights similarly results in an Event of Default under the Indenture.

16. Absent an Event of Default, the Indenture provides for the redemption of the notes under varying scenarios. The one pertinent in this case is a redemption following a successful auction of the capital securities pledged to the notes. In particular, the Indenture requires the Trustee to solicit bids in an auction format for the purchase of all the outstanding capital securities starting in 2014. A successful sale occurs if the highest bid exceeds an amount specified in the Indenture. If an auction does not result in a successful sale, then the Trustee must repeat the auction before each quarterly payment date.

17. If the auction is successful, the Indenture requires the Trustee to sell the capital securities to the highest bidder and apply the sale proceeds, together with any other available funds, to pay the senior and mezzanine notes in full, then pay the due and unpaid expenses of the Co-Issuers. Any remaining amounts "shall be paid to the Holders of the Income Notes" as a "final payment" on the same payment date.

18. Moreover, "immediately upon the execution" of a contract to sell the auctioned securities, the Indenture requires the Trustee to notify all noteholders, including holders of income notes, of "the amount of the final payment," and when noteholders may surrender their notes. Once a noteholder surrenders its notes, the Trustee "shall cause to be distributed" to that noteholder any proceeds available for that noteholder's class.

## II. THE TRUSTEE'S FAILURE TO DISTRIBUTE FUNDS TO THE INCOME NOTES VIOLATED THE INDENTURE

19. On February 9, 2018, the Trustee announced that it had completed a successful auction of the capital securities, the proceeds from which would pay the senior and mezzanine notes in full and leave a balance of over $20.6 million. The Indenture required the Trustee to distribute most, if not all, of this balance to the holders of the income notes, including Plaintiffs. A month-and-a-half later, however, the Trustee issued another notice, stating that it would instead reserve and hold back from distribution all of the remaining auction proceeds because it had been directed to do so by an "Issuer Order" from the Co-Issuers.

20. That Issuer Order—transmitted after the auction had been completed and notice to noteholders had been provided—purported to direct the Trustee to withhold distributions from income noteholders and set aside the money in a reserve to fund potential future expenses of the Co-Issuers completely unrelated to the auction, which reserve had been calculated to equal the entirety of the proceeds remaining after the redemption of the senior and mezzanine notes. In addition to being entirely theoretical, there is no telling *when or if* the Co-Issuers' claimed future expenses will actually become due and payable, and thus no telling when distributions, if any, will be made to income noteholders or when the income notes will, if ever, be redeemable.

21. The Issuer Order contravened the express terms of the Indenture, and the Trustee was required to disregard it.

22. Contrary to the purported directions in the Issuer Order, nothing in the Indenture permits the Co-Issuers to direct the Trustee (or allows the Trustee, acting on its own accord) to establish a reserve for potential future un-accrued expenses of the Co-Issuers. Rather, the only expenses of the Co-Issuers that the Indenture authorizes the Trustee to pay are those expenses that are "due and unpaid."

23. In addition, the Issuer Order violated the Indenture by, among other things, interfering with the "final payment" to the income noteholders, which was due at the same time auction proceeds were applied to the payment of the senior and mezzanine notes.

24. The Issuer Order also violated the Co-Issuers' express covenant in the Indenture not to interfere with payments to noteholders. In Section 3.8, entitled "Negative Covenants," the Co-Issuers expressly covenanted that they "shall not … claim any credit on, or make any deduction from the principal or interest payable in respect of, the Notes" (other than in certain circumstances that are not applicable). The Issuer Order breaches this covenant.

25. The Issuer Order, moreover, runs counter to the Indenture's requirement that the Trustee accept the surrender of notes for cancellation following a successful auction. Section 2.18(d) obligates the Trustee, "immediately upon the execution of" a sale agreement to "specify … the Payment Date upon which … the Holders of the Outstanding Senior Notes, Mezzanine Notes and Income Notes may surrender their Notes to the Indenture Trustee *for redemption, final payment and cancellation* …." The Indenture does not permit the Trustee to redeem, make final payments to, and cancel only some notes after a successful auction; rather, the Trustee is required to do so with respect to all of the notes.

26. This obligation is consistent with the Co-Issuers' right to reimbursement being limited to due and unpaid expenses. Any supposed right of the Co-Issuers to reserve funds indefinitely for future expenses would mean that the Trustee could not comply with its post-auction obligations to redeem the notes "immediately" with a "final payment." Because the notes are subject to redemption "immediately" after a successful auction, the Indenture contemplates that only "due and unpaid" expenses of the Co-Issuers are entitled to reimbursement, and that these expenses must be due and unpaid when the sale is completed.

27. By following the Issuer Order, the Trustee departed from its obligations under the Indenture.  Upon completion of the auction in February 2018, the Trustee sold all of the capital securities supporting the notes, and redeemed the senior and mezzanine notes.  The income notes, however, remain outstanding, with the Trustee announcing that "the Income Notes should not be surrendered on the Redemption Date" since it is unknown when or if the Co-Issuers' potential expenses will actually become due and payable.  In the meantime, the Trustee has failed to distribute available funds to the income noteholders in strict accordance with the terms of the Indenture.  This failure has triggered an Event of Default under the Indenture.

*   *   *

28. After learning that the Trustee withheld distributions from the income noteholders, Plaintiffs contacted the Trustee to advise the Trustee of their view that it was breaching its contractual obligations by following the Issuer Order, and that this breach triggered an Event of Default under the Indenture.

29. On August 7, 2018, the Trustee sent Plaintiffs a letter setting forth its position. The Trustee asserted that its actions in establishing a reserve was "authorized under the Indenture" and that the "Issuer's direction … did not appear on its face to be inconsistent with the terms of the Indenture."

30. There is thus a dispute between the parties regarding their respective rights and obligations under the Indenture.

## CAUSES OF ACTION

### COUNT I
(Declaratory Judgment)

31. Plaintiffs repeat and reallege the foregoing allegations as though they were fully set forth in this paragraph.

32. An actual, ripe, justiciable controversy exists between the parties regarding Plaintiffs' entitlement to an immediate distribution under the Indenture of the available proceeds generated by the Trustee's auction of the capital securities supporting their notes.

33. A judgment will serve the useful purpose of settling the legal issues involved, finalizing the controversy, and offering relief from uncertainty.

34. Plaintiffs are entitled to a judgment declaring that the Issuer Order directing the Trustee to hold back the remaining auction proceeds in a reserve to fund the Co-Issuers' potential future un-accrued expenses was unauthorized and in violation of the Indenture and that the Trustee was required not to comply with that Order.

35. Plaintiffs are also entitled to a judgment declaring that the Indenture requires the Trustee to distribute the remaining auction proceeds of approximately $20.6 million immediately and in accordance with the express provisions of the Indenture.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment:

a. Declaring that the Issuer Order directing the Trustee to hold back the remaining auction proceeds in a reserve to fund the Co-Issuers' potential future un-accrued expenses was unauthorized and in violation of the Indenture and that the Trustee was required not to comply with that Order.

      b.      Declaring that the Indenture requires the Trustee to distribute the remaining auction proceeds of approximately $20.6 million immediately and in accordance with the express provisions of the Indenture; and

      c.      Awarding such other relief, in law and equity, as the Court deems just and proper.

Dated: September 25, 2018
       New York, New York

                      QUINN EMANUEL URQUHART &
                         SULLIVAN, LLP

               By:    */s/* Jonathan E. Pickhardt
                      Jonathan E. Pickhardt
                      Rex Lee
                      Robert Longtin
                      51 Madison Avenue, 22nd Floor
                      New York, New York  10010
                      (212) 849-7000

                      Eric Winston
                      865 S. Figueroa Street, 10th Floor
                      Los Angeles, California 90017
                      (213) 443-3000

                      *Attorneys for plaintiffs Hildene Opportunities Master Fund, Ltd., Hildene Capital Management Pension Plan, and Membres, LLC*